## SHANNAHAN ET AL., TRUSTEES, *v.* UNITED STATES ET AL.

No. 502. Argued February 28, March 1, 1938.—Decided April 4, 1938.

Mr. *John C. Lawyer*, with whom *Mr. R. Stanley Anderson* was on the brief, for appellants.

Mr. *Leo F. Tierney*, with whom *Acting Solicitor General Bell, Assistant Attorney General Jackson,* and *Messrs. Wendell Berge, Robert L. Stern, Nelson Thomas,* and *Daniel W. Knowlton* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The sole question for decision is whether the District Court had jurisdiction of this controversy under the Urgent Deficiencies Act of October 22, 1913.[1] .

The Chicago South Shore and South Bend Railroad is an interstate electric railway subject to the Interstate Commerce Act. On August 9, 1934, the National Mediation Board requested the Commission to determine whether that carrier fell within the exemption from the scope of the Railway Labor Act, as amended June 21, 1934, 48 Stat. 1185, c. 691 (45 U. S. C. § 151). That Act confers upon the National Mediation Board certain duties in respect to carriers by railroad subject to the Interstate Commerce Act, with the following exception:

"*Provided, however,* That the term 'carrier' shall not include any street, interurban, or suburban electric rail-

---

[1] c. 32, 38 Stat. 208, 219, 220, 28 U. S. C. §§ 41(28), 46, 47.

way, unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation now or hereafter operated by any other motive power. The Interstate Commerce Commission is hereby authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of this proviso."

After due hearing had, at which the South Shore introduced evidence and filed its brief, the matter was argued orally before the Commission, which, on February 14, 1936, made its Report and the following determination (214 I. C. C. 167, 173):

"We find that the line of the Chicago, South Shore and South Bend Railroad is not a street, interurban, or suburban electric railway within the meaning of the exemption proviso in the first paragraph of Section 1 of the Railway Labor Act, as amended June 21, 1934, and it is therefore subject to the provisions of that act."

No order was entered thereon by the Commission.

Shannahan and Jackson, who had been appointed Trustees of the South Shore by the federal court for northern Indiana, and had filed their appearance in the proceeding, applied for a rehearing. An order was entered denying the same. Thereupon, the Trustees filed this suit against the United States, invoking the jurisdiction of the court under the Urgent Deficiencies Act of October 22, 1913, to set aside the alleged order. They do not deny that the South Shore is an interstate carrier subject to the jurisdiction of the Commission; and that the Act is constitutional. Their contention is that:

"A correct application of the law to the undisputed facts leads to the conclusion that the lines of the railroad of appellants are an electric interurban railway under the

exemption proviso of the first division of Section 1 of the Railway Labor Act and that there is no substantial evidence to support the conclusion and determination of the Commission."

The Commission intervened. Its answer, and that of the United States, challenged, the jurisdiction of the court on the ground that the determination of the Commission was not an "order" within the meaning of the Urgent Deficiencies Act. The case was heard before three judges on the pleadings and evidence; and a decree was entered dismissing the bill for want of jurisdiction, one judge dissenting. 20 F. Supp. 1002. The Trustees appealed.

*First.* The function of the Commission is limited to the determination of a fact. Its decision is not even in form an order. It "had no characteristic of an order, affirmative or negative." *United States* v. *Illinois Cent. R. Co.,* 244 U. S. 82, 89; *United States* v. *Atlanta, B. & C. R. Co.,* 282 U. S. 522, 527–28. Compare *Lehigh Valley R. Co.* v. *United States,* 243 U. S. 412, 414. But even if this difficulty is overlooked, others are insuperable. The decision neither commands nor directs anything to be done. "It was merely preparation for possible action in some proceeding which may be instituted in the future." *United States* v. *Los Angeles & S. L. R. Co.,* 273 U. S. 299, 310. The determination is thus not enforceable by the Commission; the only action which could ever be taken on it would be by some other body. It is as clearly "negative" as orders by which the Commission refuses to take requested action. *United States* v. *Griffin, ante,* p. 226.[2] As such, it is not reviewable under the Urgent Deficiencies Act.

---

[2] See also *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Hooker* v. *Knapp,* 225 U. S. 302; *Lehigh Valley R. Co.* v. *United States,* 243 U. S. 412, 414; *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457, 482–83; *Atchison, T. & S. F. Ry. Co.* v. *United States,*

*Second.* Moreover, the determination of the Commission is not even a decision which the Mediation Board, by whom it was sought, is empowered to enforce. The Act confers upon the Board no power over any carrier. It merely imposes upon the Board possible duties in respect to interstate carriers by railroad not exempted by the proviso. The Board's duties, in case of dispute between carrier and employees, require it:

(1) to "promptly put itself in communication with the parties to [the] controversy, and . . . use its best efforts, by mediation, to bring them to agreement." When a dispute is settled through these efforts a mediation agreement is signed, and should any question arise subsequently regarding the meaning or application of such an agreement, the Board is required upon request of either party "and after a hearing of both sides [to] give its interpretation within thirty days."

(2) If the mediating efforts prove unsuccessful, it is the Board's duty to "at once endeavor as its final required action . . . to induce the parties to submit their controversy to arbitration, in accordance with the provisions of" the Act. If arbitration is agreed upon it may become the Board's duty to name a third arbitrator if the two named by the parties fail to select him.

(3) If arbitration is refused and the dispute threatens "substantially to interrupt commerce to a degree such as to deprive any section of the country of essential transportation service," then the Board is required to notify the President.

(4) If, in selecting representatives to deal with the carriers, disputes arise among employees as to what organization they desire to represent them, it is the duty of the Board, on request of either party, to investigate

279 U. S. 768, 781; *Piedmont & Northern Ry. Co.* v. *United States,* 280 U. S. 469, 475–77; *Standard Oil Co.* v. *United States,* 283 U. S. 235, 238; *United States* v. *Corrick,* 298 U. S. 435, 438.

and to certify in writing to the parties and to the carrier the names of the individuals or organizations that have been designated and authorized to represent the employees.

(5) If the National Railroad Adjustment Board undertakes arbitration, and it fails to select a referee, the Mediation Board has the duty of doing so.

In order not to fail in the performance of these duties the Mediation Board had to satisfy itself whether the South Shore was a railroad within the exemption proviso. To that end, it applied to the Commission for its determination. If it had omitted to do so, the application might have been made "upon complaint of any party interested." The determination, whether applied for by the Board, by a carrier, or by employees, is clearly not an order enforceable within the meaning of the cases construing and applying the Urgent Deficiencies Act. It is a decision on a controverted matter, comparable to those considered in *United States* v. *Los Angeles & Salt Lake R. Co,* 273 U. S. 299, in *Great Northern Ry. Co.* v. *United States,* 277 U. S. 172, in *United States* v. *Atlanta, B. & C. R. Co.,* 282 U. S. 522, and in *United States* v. *Griffin, ante,* p. 226, which were held not to be subject to review under the Urgent Deficiencies Act.

*Third.* The Trustees argue that the determination of the Commission is an affirmative "order, because it fixed for the first time, by the only body authorized by law to do so, the status of the carrier"; that by fixing the status, the obligations of the Railway Labor Act are fixed upon the carrier; and that wilful failure or refusal of any carrier to comply with certain of the obligations is made a misdemeanor.[3]

---

[3] 45 U. S. C. § 152(10). That declares: "The willful failure or refusal of any carrier, its officers or agents, to comply with the terms of the third, fourth, fifth, seventh or eighth paragraph of this section shall be a misdemeanor. . . ." The third paragraph prohibits inter-

*Lehigh Valley R. Co.* v. *United States, supra,* shows that the determination of a status or similar matter is not action subject to review under the Urgent Deficiencies Act even if disregard of the determination may subject the carrier to criminal prosecution.[4]  The Panama Canal Act, 37 Stat. 560, prohibited, after July 1, 1914, any ownership by a railroad in any common carrier by water where the railroad might compete with the water carrier; prescribed a heavy penalty for any violation of the prohibition; and conferred upon the Commission jurisdiction:

"to determine questions of fact as to the competition or possibility of competition, after full hearing, on the application of any railroad company or other carrier.  Such application may be filed for the purpose of determining whether any existing service is in violation of this section and pray for an order permitting the continuance of any vessel or vessels already in operation . . ."

Thereupon in January, 1914, the Lehigh Valley filed with the Commission a petition for a hearing on the question whether the services of a steamboat line owned by it would be in violation of the above section and for an extension of time.  The Commission held that, by vir-

---

ference, influence or coercion in the designation of representatives. The fourth assures the right of employees to bargain collectively through representatives of their own choosing, and forbids carriers to maintain or financially assist any labor organization.  The fifth prohibits carriers from requiring any person seeking employment to sign any contract to join or not to join a labor union.  The seventh prohibits carriers from changing rates of pay, rules or working conditions of employees as a class except as prescribed in § 156.  The eighth requires carriers to notify its employees by printed notices in such form as shall be specified by the Mediation Board that all disputes will be handled in accordance with the requirements of the Act.

[4] For details, see opinion of the District Court for Eastern Pennsylvania, 234 Fed. 682.

tue of the arrangements found to exist, the railroad did or might compete with its boat line; and dismissed the petition. This Court held that the risk to which the railroad was left subject did not come from the order, but from the statute which contained the prohibition and provided a penalty; that, therefore, it was not an affirmative order; and that the District Court was without jurisdiction under the Urgent Deficiencies Act. Compare also *Piedmont & Northern Ry. Co.* v. *United States,* 280 U. S. 469, 476–77.

*Fourth.* Whether the determination of the Commission is reviewable in a district court by some judicial procedure other than that of the Urgent Deficiencies Act we have no occasion to consider. Compare *United States* v. *Griffin, supra,* and *Lehigh Valley Ry. Co.* v. *United States, supra.*[5]

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

[5] In *Utah-Idaho Cent. Ry.* v. *Shields* (unreported), D. Utah, Oct. 15, 1936, and in *Hudson & Manhattan Ry.* v. *Hardy,* S. D. N. Y., Feb. 21, 1938, 22 F. Supp. 105 (where jurisdiction under the Urgent Deficiencies Act was specifically denied), the electric railways involved were declared in proceedings before single judges to be within the proviso excluding them from the application of the Act, and final injunctions against prosecution for penalties were granted, although the Interstate Commerce Commission, in 214 I. C. C. 707 and 216 I. C. C. 745, respectively, had reached the opposite conclusion. In *Texas Electric Ry.* v. *Eastus* (unreported), N. D. Tex., June 4, 1936, a preliminary injunction was likewise granted in spite of the Commission's decision in 208 I. C. C. 193. From informal sources it has been learned that similar proceedings have been instituted in other cases. *Chicago Warehouse & Term. Co.* v. *Igoe,* N. D. Ill., and *Chicago Tunnel Co.* v. *Igoe,* N. D. Ill., to review 214 I. C. C. 81; *Hudson & Manhattan Ry.* v. *Quinn,* D. N. J., to review 216 I. C. C. 745; *New York, W. & B. R. Co.* v. *Hardy,* S. D. N. Y., to review 218 I. C. C. 253.