**AMERICAN FEDERATION OF LABOR et al. v. NATIONAL LABOR RELATIONS BOARD.**

No. 7257.

United States Court of Appeals for the District of Columbia.

Argued Dec. 5, 1938.

Decided Feb. 27, 1939.

Herbert S. Thatcher and Joseph A. Padway, both of Washington, D. C., for petitioners.

Robert B. Watts and Laurence A. Knapp, both of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

International Longshoremen's Association is a labor organization whose members are engaged in longshore work on the Pacific Coast. International Longshoremen's Association Local 38 is a similar organization affiliated with International, and International in turn is affiliated with the American Federation of Labor. In the latter part of September, 1938, petitioner filed its petition in this court to review and set aside an order of the National Labor Relations Board made June 21, 1938. The controversy concerns the rival claims of the American Federation of Labor and the Committee for Industrial Organization (C. I. O.) and their respective affiliates to represent maritime workers in interstate and foreign commerce in some or all of the ports on the Pacific Coast. The dispute arose as the result of the filing by the C. I. O. of a petition asking the Board to hold that the employer unit should embrace the entire West Coast and to certify its affiliate as exclusive bargaining agent. The A. F. of L. answered the petition, denying the Board's power to prescribe a unit larger than a single employer. There were lengthy hearings before the Board at which both parties were represented, and many witnesses examined. Subsequently, on the 21st of June, the Board made elaborate findings of fact and conclusions of law, and issued its certificate. The decision united in one unit some 200 or more employers operating in different ports from Canada to Mexico and found that C. I. O. organizations represented the majority of the employees of the whole. The employers accepted the certification without question and made a collective bargaining contract in which the C. I. O. was recognized as the exclusive representative of all West Coast longshore employees. A. F. of L. (and its affiliates) petitioned the Board for a rehearing. The Board

adhered to its former decision, and denied the petition. This appeal followed. The Board appeared and filed what it calls a "special appearance", objecting to the jurisdiction of this court to hear the appeal, and moved to dismiss.

█ The question in the case is whether the decision appealed from is a "final order" within the terms of the Act.[1] As a preliminary question, the Board argues that petitioner is without any standing to appeal regardless of whether the order is final or not, but we think the language of Section 10(f) of the Act sufficiently answers this contention. It authorizes a review at the instance of "any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought". The right under this section has already been invoked without question by labor unions in a number of cases,[2] and if the Act should be held to confine the right of review to an employer and to deny it to a representative of the employees, it would create an anomalous situation. We think the fair intendment of the language as well as the purpose of Congress was to provide a judicial review to *any aggrieved party* where the order is final, without narrowing it in the manner now contended for by the Board. In this view we have a case in which the right, called by the Supreme Court in Texas & New Orleans Railroad Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 571, 50 S.Ct. 427, 74 L.Ed. 1034, a property right, is charged to have been wholly destroyed by the action of the Board.

The principal loading and discharging ports on the Pacific Coast are Tacoma, Olympia, Port Angeles, San Francisco, Los Angeles, Seattle, and Portland. There are about 25 smaller ports, and the total number of employees is stated to be in the neighborhood of 13,000. The number of employers varies with the size of the ports, but altogether they total several hundred, and they in turn are represented by some four or five associations of employers, and there are separate employer associations in most of the ports. When the Board's hearings were begun, petitioner represented a majority of the employees in one or more of the ports and likewise a majority of the employees of a number of separate employers. Petitioner's grievance grows out of the fact that in ascertaining the appropriate representative of the men the Board ignored the identity of separate employers or of separate ports and extended the employer unit to include the entire Pacific Coast, with the result that the rival union was designated and certified as the sole representative—in consequence of which its own union was "put out of business" and its members obliged to become members of its rival and deal with the employer either exclusively through it or not at all.[3] In short, that by reason of the Board's decision to enlarge the "unit" to embrace about 25 separate ports and the acceptance of its decision by the employers, a situation has arisen as the result of which a so-called closed shop contract may be entered into which will require petitioner's members, even where they predominate in a particular locality or business, to join the other union or possibly be displaced from their employment by members of that union.

Enough has been said to show that we have here a controversy between two national labor organizations, both of which

---

[1] National Labor Relations Act, 49 Stat. 449, 29 U.S.C. (Supp. IV), sec. 151 et seq., 29 U.S.C.A. § 151 et seq.

[2] See particularly Consolidated Edison Co., et al. v. National Labor Relations Board, et al., and International Brotherhood of Electrical Workers, et al. v. National Labor Relations Board, 59 S. Ct. 206, 83 L.Ed. ——, decided December 5, 1938.

[3] "Sec. 9. [§ 159.] (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act [chapter], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

have appealed to the Board to resolve their conflicting rights and the rights of their members, and one of which claims that the unlawful action of the Board in the designation of an employer unit beyond the terms of the Act has destroyed its property right and the property rights of its members and that, unless it can obtain a review by appeal to this court or some other Circuit Court of Appeals, it will be wholly without redress of any kind.

The Board denies jurisdiction on the ground that the action taken by it was the result of proceedings investigatory in character; that the Act in the circumstances did not contemplate the issuance of any order, final or otherwise; that its finding and decision do not require petitioner to do anything or to refrain from doing anything; and that petitioner is, therefore, not a person aggrieved nor the decision appealed from a final order which will confer jurisdiction upon a court.

Petitioner concedes that it is not entitled to a judicial review unless there was a final order, but insists that in the facts narrated above the decision and the so-called certificate entered thereon constitute a final order; that its effect is to completely foreclose and determine its legal rights and to leave it without redress of any kind unless this review is open to it.

The Supreme Court has held in a number of cases that mere preliminary or procedural orders of an administrative body are not reviewable by the Circuit Courts of Appeals, and this brings us to our starting point, namely, whether what happened here was in effect a final order commanding or directing something to be done. In the case of Mallory Coal Company v. National Bituminous Coal Commission, App.D.C., 99 F.2d 399, 407, we endeavored to review this question in the light of the decisions of the Supreme Court and to lay down a test as a guide to ourselves in determining the question. We said:

"Underlying all these tests of appellate jurisdiction is the fundamental requirement that the person seeking review must first have exhausted his administrative remedy. If the order in the particular case is definitive rather than preliminary or procedural; if the order operates particularly upon the person seeking review, rather than upon the world generally or upon a large group of interested persons; if the order was entered in a proceeding, adversary in character, after notice given, with a hearing at which witnesses were examined and points of law argued, and in which findings of fact were made; if a petition for rehearing was filed urging, upon the Commission, the objection to the order now urged for the consideration of the court; each of these circumstances—and more particularly all of them together —may indicate that the administrative remedy has been exhausted and that it is time for judicial review. Until that time comes, the matter should remain in the control of the administrative agency."

Examined in the light of this formula, the decision of the Board in the case in hand contains all the elements we believed to be necessary to make it reviewable under the statute. The proceeding out of which it emerged was neither preliminary nor incident to another proceeding. It concerned a controversy affecting the vital interests of two rival unions. It was begun and concluded for the purpose of settling the dispute. It was authorized by the statute to be made and so far as concerned the unions it was final. Its actual effect was to eject petitioner from the controversy. The suggestion that petitioner might have induced the employer to reject the finding and subject himself to an unfair labor proceeding and thus secure a court review, is wholly beyond the point. Petitioner had no control of the employer, and here the petition shows that the employer, acting within the spirit as well as the letter of the Act, promptly obeyed the Board's decision and entered into a contract in accordance with its terms. So that what happened was precisely what in a proper case the Act designed should happen—but, as we have seen, with the result that petitioner in the localities in which its members constituted a majority, was—if the Board's decision as to the representative unit is valid—deprived of the very thing which petitioner insists it was the purpose of Congress to secure and protect. We had thought that whether an order or decree is final is not to be determined by the name which the court or board gives it but should be decided on consideration of its essence, its substance, its intrinsic nature. Or in other words— what is done by it. The decision in question undoubtedly operated particularly upon petitioner. It was an adversary party. The decision and the refusal to rehear closed the controversy and completely ex-

hausted petitioner's administrative remedies. But, notwithstanding all of this, we think we are bound to hold that the "decision" was not an "order" as that term is defined in Shannahan v. United States, 303 U.S. 596, 58 S.Ct. 732, 82 L.Ed. 1039, and in Shields v. Utah Idaho Central Railroad Co., 59 S.Ct. 160, 83 L.Ed. ——, decided December 5, 1938.

In the Shannahan case the controversy involved the right of an electric railroad to be exempt from the scope of the Railway Labor Act under a proviso excluding street, interurban, or suburban railways. The Act authorized and directed the Interstate Commerce Commission upon request of the Mediation Board to *"determine"* whether the line fell within the terms of the proviso. The Commission determined it did not. An appeal was taken under the provisions of the Urgent Deficiencies Act to set aside the decision. The Commission challenged jurisdiction of the court on the ground that the "determination" of the Commission was not an order, and on hearing it was so decided and the bill dismissed. On appeal to the Supreme Court the decision was affirmed, and it was said the "determination" was not an order at all and was no more than a "decision on a controverted matter". And in Shields v. Utah Idaho Central Railroad Co., supra, which shortly followed, the Court said a "determination" or "decision" by an administrative body may be definitive, may be legal, and may be binding as to all parties concerned, but it is still not an "order" if it does not also command or direct a particular thing to be done[4]—and, because it is not an order, it is not appealable and is subject to challenge and judicial review only by bill in equity.

Accepting, as we must, this restrictive definition and applying it to the case at hand, we hold that, though the decision here was required by the Act to be made and to be made on the evidence and argument after judicial hearing, and though it was definitive, adversary, binding, final, and in this case struck at the very roots of petitioner's union and destroyed its effectiveness in a large geographical area of the Nation, it was not an order because the Act did not require it to be made in the language of command, and hence is reviewable—as was held in the Shields case,

supra, and in Utah Fuel Co. v. National Bituminous Coal Commission, 59 S.Ct. 409, 83 L.Ed. ——, decided Jan. 30, 1939—only in an independent suit in equity commenced in a District Court.

Petition dismissed.

---

[4] As was said in the Shannahan case, page 599, 58 S.Ct. 732.