## EAST OHIO GAS CO. v. FEDERAL POWER COMMISSION.

No. 8343.

Circuit Court of Appeals, Sixth Circuit.

Nov. 8, 1940.

William B. Cockley, of Cleveland, Ohio (Walter J. Milde, Theodore R. Colborn, and Jones, Day, Cockley & Reavis, all of Cleveland, Ohio, on the brief), for petitioner.

Richard J. Connor, of Washington, D. C. (David W. Robinson, Jr., Robert E.

May, and Justin R. Wolf, all of Washington, D. C., on the brief), for respondent.

Thomas J. Herbert and Kenneth L. Sater, both of Columbus, Ohio, for the State of Ohio and Public Utilities Commission of Ohio, amici curiæ.

Henry S. Brainard and Spencer W. Reeder, both of Cleveland, Ohio, for City of Cleveland, Ohio, amicus curiæ.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

The questions for decision raised by the petition, response, and motion to dismiss, include the reviewability and, if reviewable, the validity of an order of the Federal Power Commission, promulgated by virtue of authority asserted under § 5(b) of the Natural Gas Act, 15 U.S.C.A. §§ 717 to 717w, the petition for review being filed in pursuance of § 19(b) of the Act.

The Natural Gas Act, effective June 21, 1938, declares that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that federal regulation in matters relating to transportation of natural gas and its sale in interstate and foreign commerce is necessary in that interest, but that the provisions of the Act shall not apply to other transportation or sale, or to the local distribution or production. The Act provides more or less familiar mechanism for the ascertainment of cost of property dedicated to the public interest by a natural gas company, and the justness and reasonableness of rates and charges demanded by such companies in connection with the transportation of gas, and confers upon the Federal Power Commission, regulatory and investigatory powers, among which are those of § 5(b), Title 15, § 717d, U.S.C.A.: "The Commission upon its own motion, or upon the request of any State commission, whenever it can do so without prejudice to the efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transportation of natural gas by a natural-gas company in cases where the Commission has no authority to establish a rate governing the transportation or sale of such natural gas."

The petitioner is an Ohio Company distributing natural gas to consumers in municipalities of northeastern Ohio, including the city of Cleveland. The gas distributed by it comes 30% from fields in Ohio and 70% from West Virginia, the West Virginia gas being purchased at the Ohio River under contract with a West Virginia corporation, and mingled with the Ohio gas in the petitioner's transmission lines before distribution to consumers. The petitioner does not sell imported gas for resale, does not transport gas for others, and its operations for a long time have been subject to the jurisdiction of the Public Utilities Commission of Ohio. On July 5, 1938, the Federal Power Commission issued its Order No. 51 instituting an investigation of natural gas companies, and directing the filing of a report. Accompanying this was a questionnaire to be answered by all reporting companies, requiring a description of the location and nature of the company business and operations, statistical information as to the quantities of gas produced, purchased and sold, and operating and financial reports. The petitioner answered the questionnaire, but with the reservation that it was not a natural gas company within the meaning of the Act, and the assertion that it was complying with the request of the Commission in reliance upon its advice that such compliance would not be construed as a waiver of its right to contest the jurisdiction of the Commission in any proceeding affecting it which might be instituted under the Act.

Later, the petitioner learned, that on October 26, 1938, the city of Cleveland, with which it was then engaged in a rate controversy, had petitioned the Commission to institute an investigation under § 5(b), to determine the petitioner's cost of transportation of natural gas from the Ohio River to the Cleveland "city gate," and to order the petitioner to file an inventory of that part of its property devoted in whole or in part to the transportation of such gas, with a statement of the original cost of such property. The petitioner at once requested a hearing before the Commission, asserting it was not a natural gas company; that the city of Cleveland was not entitled to apply for an investigation of costs, under the Act, since it was not a State Commission; that the cost of the petitioner's properties was not shown by its books and could be determined only by an expensive accounting and engineering study; and that when so determined it would have no practical utility since it would reflect costs prevailing

prior to the great increase in prices brought about by the World War. It alleged further that it was impractical to determine separately the cost of transporting the West Virginia gas, and that such cost, when obtained, would be only a minor element in the total cost of gas served to consumers in Cleveland, and so without utility to anyone.

Notwithstanding this protest and request for hearing, the Commission, on February 14, 1939, promulgated an order which recites that the petitioner is engaged in the transportation of natural gas in interstate commerce, and is, therefore, a natural gas company within the meaning of the Natural Gas Act; that it is advisable, necessary, and proper, in the public interest, for the Commission, upon its own motion, to institute an investigation into the cost of transportation of natural gas by the petitioner from the Ohio River to the Cleveland city gate. It directed an investigation to be undertaken and that the petitioner furnish the Commission inventories, statements of original cost of properties and operating expenses for the years 1936, 1937, and 1938, insofar as applicable to the transportation of natural gas from the Ohio River to Cleveland. The petitioner was not made a party to the proceeding, and no hearing was accorded it. On March 16, 1939, it petitioned for a rehearing and stay, pursuant to § 19(a). In this petition it not only asserted that it was not a natural gas company within the meaning of the Act, but also that to compile and furnish the data required by the order, would cost the petitioner at least $175,000, could not produce a result useful in the regulation of rates or otherwise, and that the order was arbitrary, unreasonable, and in excess of any power constitutionally conferred upon the Commission. This application was likewise denied without a hearing and without affording the petitioner opportunity to support its allegations by evidence or argument. A second application for rehearing was also denied.

The petitioner requests review of the Commission's order, under the provisions of § 19(b) of the Act, which, insofar as material, provides: "Any party to a proceeding under this Act [chapter] aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the circuit court of appeals of the United States * * * by filing in

such court * * * a written petition praying that the order of the Commission be modified or set aside in whole or in part. * * * The Commission shall certify and file with the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part."

The petitioner here contends, as it did to the Commission, that it is not a natural gas company subject to the jurisdiction of the Commission under the Natural Gas Act; that the clear purpose of the Act is not to duplicate or supersede state regulation, but to provide regulation where none had existed; that it is not engaged in the business of transporting natural gas in interstate or foreign commerce, but that its business is distribution of natural gas solely in intrastate commerce; that all of its production and transportation activities are purely incidental to that local activity, and that it is, therefore, excluded from the operation of the Act specifically by its terms; that if the Act applies to its business, it is unconstitutional; that the Commission's order violates the due process clause of the Federal Constitution in that it was made without a hearing and without receiving evidence.

The Commission moves to dismiss on the ground that its order of February 14, 1939, and its later amended order, are not reviewable within the purview of § 19(b), and that we are therefore without jurisdiction to modify or set them aside. Section 19(b), it asserts, does not contemplate a review of orders of a procedural, interim, and preliminary character; that the orders sought to be reviewed are merely the means whereby the Commission has taken initial steps to the formulation of an ultimate determination, and since the ultimate determination, like a final valuation order of the Interstate Commerce Commission, is not reviewable, preliminary procedural orders are likewise not subject to review. Upon this question it asserts the decision of the Supreme Court in Federal Power Comm. v. Metropolitan Edison Co. et al., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408, to be decisive and to require the granting of its motion to dismiss; and that the petitioner's contentions that it is not a natural gas

company, that the Act does not apply to it and, if applicable, is unconstitutional, have no bearing upon its reviewability.

The petitioner relies upon what it asserts to be the plain meaning of § 19(b), and the holdings in Federal Power Comm. v. Pacific Power & Light Co., 307 U.S. 156, 59 S.Ct. 766, 83 L.Ed. 1180, and its companion case, Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 756, 83 L.Ed. 1147. In the latter case the court undertook a classification for purposes of clarification of its previous decisions involving the reviewability of determinations of federal regulatory bodies, and found that decisions involving the so-called "negative order" doctrine fall into three categories; the first two of which alone are important here:

"(1) Where the action sought to be reviewed may have the effect of forbidding or compelling conduct on the part of the person seeking to review it, but only if some further action is taken by the Commission. Such a situation is presented by an attempt to review a valuation made by the Interstate Commerce Commission which has no immediate legal effect although it may be the basis of a subsequent rate order.

"(2) Where the action sought to be reviewed declines to relieve the complainant from a statutory command forbidding or compelling conduct on his part. The most obvious case is a denial of permission by the Interstate Commerce Commission for a departure from the long-short haul clause."

In group 1, the order sought to be reviewed does not, of itself, adversely affect the complainant—it only affects his rights adversely on the contingency of future administrative action, and in view of traditional conceptions of federal judicial power, resort to the courts in these situations is either premature or wholly beyond their province. Group 2 is composed of instances of statutory regulations which place restrictions upon the free conduct of the complainant, to rid himself of which, he must either ask the regulatory body to place him outside the statute, or, being within it, must seek judicial review if his grievance qualifies as a "case" or "controversy," responds to conventional requisites of equity jurisdiction, and the terms of the statute confer jurisdiction upon the reviewing court. Although the argument, upon which this classification is supported, is somewhat broad in phrasing, we assume that it is intended to apply to the direct review of orders of regulatory bodies upon the petition of those affected by them, and has no application to original proceedings against the Commission, or by it, for enforcement, where respondents have full opportunity to contest validity, Jones v. Securities & Exchange Comm., 298 U.S. 1, 14, 56 S.Ct. 654, 80 L.Ed. 1015; Federal Power Comm. v. Edison Co., supra, 304 U.S. page 386, 58 S.Ct. 963, 82 L.Ed. 1408, nor to the problems involved in Shields v. Utah Idaho Central R. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111, and Shannahan v. United States, 303 U.S. 596, 58 S.Ct. 732, 82 L.Ed. 1039.

The petitioner contends that there is perfect analogy between its situation and that in the Rochester case, where a petition to review an order of the Communications Commission was entertained upon the view that it fell within group 2 of the classification. The Communications Commission had declared the Rochester Company to be a telephone corporation subject to its jurisdiction, and ordered it to comply with previous general orders requiring telephone companies to furnish detailed information as to their affairs. The petitioner asserts that the Commission in the present case has determined it to be a natural gas company, and so subject to its jurisdiction, and has ordered it to prepare and submit extensive information at great expense. So much is clear, but here the analogy ceases. The order in the cited case was held reviewable because "it was not a mere abstract declaration regarding the status of the Rochester under the Communications Act [47 U.S.C.A. § 151 et seq.], nor was it a stage in an incompete process of administrative adjudication. The contested order determining the status of the Rochester, necessarily and immediately carried direction of obedience to previously formulated mandatory orders addressed generally to all carriers amenable to the Commission's authority. Into this class of carriers the order under dispute covered the Rochester, and by that fact, in conjunction with the other orders, made determination of the status of the Rochester a reviewable order of the Commission."

The order here sought to be reviewed declares the status of the petitioner as a natural gas company, but such status

389

does not necessarily or immediately carry a direction of obedience to any mandatory order applicable to all having such status. The petitioner seeks to bring itself within the rationalization of the Rochester decision, by the contention that the Commission's Order No. 51 becomes binding upon it by virtue of the Commission's determination of its status, and by the asserted inference that the Commission has under contemplation and will make other general orders applicable to all natural gas companies. But General Order No. 51 has already been complied with by the petitioner—it is no longer the subject of controversy—and mere expectation that other orders of the Commission may follow does not presently impose upon the petitioner any necessary or immediate mandate which, under the reasoning of the Rochester case, makes determination of status reviewable. The challenged order, therefore, clearly falls into group 1 of the Rochester classification.

When we consider the language of § 19(a), under which the petitioner claims a right to review by the clear meaning of its terms, it is in no better situation. Section 19(b) differs not materially from §§ 313(a) and 313(b) of the Federal Power Act, 16 U.S.C.A. § 825l(a, b), construed in Federal Power Comm. v. Edison Co., supra. There is was held that such provisions should not be construed as authorizing a review of every order that the Commission might make, albeit of a mere procedural character, for that would do violence to the manifest purpose of the provision which relates to orders of a definitive character dealing with the merits of a proceeding before the Commission. The statute confers no authority upon the Commission to enforce its directions, save by application to a Federal Court, and upon such application, the respondents would have full opportunity to contest the validity of the order. The Act here involved contains similar provisions for enforcement (§§ 20, 21, 22), and it is to be noted that its penalties are conditioned upon the violations being "wilful," upon which qualification the court in the Edison case made the comment that it "fully protects one whose refusal is made in good faith and upon grounds which entitle him to the judgment of the court before obedience is compelled." [304 U.S. 375, 58 S.Ct. 968, 82 L.Ed. 1408.]

It may be that the petitioner has misconceived its remedy and that a suit in equity or defense to an action by the Commission for enforcement is the appropriate means for contesting the validity of the order or the constitutionality of the Act, Shannahan v. U. S., supra; Shields v. Utah Idaho Central R. R. Co., supra. This, however, we are not required to, and so do not, decide.

The petition for review is dismissed for want of jurisdiction.