## AMERICAN UNION TRANSPORT, Inc., et al. v. UNITED STATES.

District Court, S. D. New York.
Nov. 30, 1943.

On Rehearing March 7, 1944.

Harold L. Allen, of New York City, for plaintiffs.

Howard F. Corcoran, U. S. Atty., Marvin M. Notkins, Asst. U. S. Atty., and Maurice A. Krisel, Atty., War Shipping Administration, all of New York City, for defendant.

Before SWAN, Circuit Judge, and CAFFEY and COXE, District Judges.

SWAN, Circuit Judge.

The plaintiffs are corporations, partnerships and individuals engaged in business in the Port of New York as forwarders of freight in foreign commerce. Alleging that they. are not persons subject to the Shipping Act of 1916 and the amendments thereof, 46 U.S.C.A. Chap. 23, §§ 801–842, they brought this suit against the United

States pursuant to § 31 of the Shipping Act, 46 U.S.C.A. § 830, whereby the venue and procedure in suits to restrain enforcement of any order of the Maritime Commission are made the same as in similar suits respecting orders of the Interstate Commerce Commission. See 28 U.S.C.A. §§ 41(28), 43–48. The complaint attacks two orders of the Maritime Commission made on August 21, 1942, and January 14, 1943, respectively.

The order of August 21, 1942, recites that each of the plaintiffs and others similarly engaged in "the business of forwarding in foreign commerce" is an "other person subject to this Act" within the meaning of that term as used in §§ 1 and 17 of the Shipping Act, 46 U.S.C.A. §§ 801, 816; that a specified corporation (not one of the plaintiffs) had engaged in practices which violated section 17 of the Act; and that the public interest requires a general inquiry to determine the extent of the existence of such practices among other forwarders in the Port of New York. It ordered that the Commission upon its own motion and without formal pleading "enter upon an investigation with a view toward making such order or orders or taking such other action in the premises as may be warranted by the record"; and that the plaintiffs and other forwarders named in an appendix to the order be made respondents in the proceeding. After the issuance of this order the Commission sent to all the respondents named therein a questionnaire which propounded, among other questions, the following: "Do you carry on the business of forwarding in connection with common carriers by water in foreign commerce." All the plaintiffs answered this question in the affirmative, but allege in their complaint that this answer was erroneous. Thereafter on December 9 and 10, 1942, public hearings were held, and on the date last named the hearing was adjourned sine die to enable the Commission to obtain further information for a later resumption of the investigation. On January 14, 1943, the Commission on its own motion and purporting to exercise powers conferred by section 21 of the Act, 46 U.S.C.A. § 820, ordered the plaintiffs and others to answer within 30 days a questionnaire which required a lengthy report of

business they had transacted in specified periods during 1940, 1941 and 1942, with break-downs of their receipts and disbursements. The plaintiffs thereupon brought the present suit.

A motion for an interlocutory injunction being made, a court of three judges was formed pursuant to 28 U.S.C.A. § 47. Thereafter the defendant filed its answer and moved for summary judgment in its favor upon the pleadings, exhibits, affidavits and evidence introduced at the Commission's hearings. Both motions were heard together on July 15, 1943. Decision was deferred at the request of the parties in order that they might later submit briefs, which they have done.

From the defendant's answer and exhibits attached thereto it appears that on May 18, 1943, the Commission vacated its order of January 14, 1943 and substituted therefor another order and questionnaire which required a similar but somewhat less burdensome report of business to be filed by the plaintiffs within 45 days from the date of the order. The plaintiffs have not formally amended their complaint to cover the May 18th order but both parties desire us to pass upon the validity of that order. Consequently we shall proceed upon the assumption that the complaint has been amended so that all allegations as to the order of January 14, 1943, except those referring to failure to submit the questionnaire to the Director of the Budget, now refer to the order of May 18th.[1]

■ In respect to the order of August 21st the plaintiffs must fail. This is not the kind of order which the District Court is given jurisdiction to annul under 28 U.S.C.A. §§ 41(28), 46, 47. See United States v. Illinois Cent. R. Co., 244 U.S. 82, 89, 37 S.Ct. 584, 61 L.Ed. 1007; United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 309, 47 S.Ct. 413, 71 L.Ed. 651; Shannahan v. United States, 303 U.S. 596, 601, 58 S.Ct. 732, 82 L.Ed. 1039; Rochester Tel. Corp. v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 83 L.Ed. 1147. The order of August 21st does not of itself adversely affect the plaintiffs; although it recites that they are subject to the Act, it does not constrain them to do or refrain from doing anything; their rights will be adversely affected only on the contingency of future

---

[1] The defendant's answer alleges that the Director of the Budget approved the form and contents of the question-naire annexed to the order of May 18th. See sec. 5, 56 Stat. 1078, 50 U.S.C.A. Appendix, § 139c.

administrative action. It is like an order of the Interstate Commerce Commission setting a case for hearing despite a challenge to its jurisdiction, as in the Illinois Central case, supra. Whether the Maritime Commission has jurisdiction to enter, on its own motion, upon a general investigation of the practices of freight forwarders is immaterial so far as the August 21st order is concerned. Even if jurisdiction were lacking, the order directing the investigation did not adversely affect the plaintiffs; nor does that part of the order which names them as respondents. They are under no constraint to appear at the investigation, if hearings shall be resumed.

■ The situation is different with respect to the May 18th order. This directs affirmative action on the part of the plaintiffs, and for failure to comply with the order the statute imposes a penalty at the rate of $100 for each day of default. 46 U.S.C.A. § 820. The power of the Commission to make such order being in dispute, the need for injunctive relief is at least as great as it is with respect to orders of the type discussed by Mr. Justice Frankfurter as "Group (2)" in the Rochester Telephone opinion, 307 U.S. at pages 132–134, 59 S.Ct. at pages 758, 759, 83 L.Ed. 1147. If the Commission has exceeded its statutory powers, this court has jurisdiction to enjoin enforcement of the order. 46 U.S.C.A. § 830; Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562, 39 S.Ct. 375, 63 L.Ed. 772.

The order purports to be issued pursuant to § 21, 46 U.S.C.A. § 820, which authorizes the Commission to require "any common carrier by water, or other person subject to this chapter" to file "any periodical or special report" or "any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this chapter." Unless the plaintiffs are persons "subject to" Chapter 23 of Title 46 the Commission lacks power to require them to file with it answers to the questionnaire annexed to the order of May 18th. Whether the chapter does subject them to its provisions turns upon the definitions contained in § 1, 46 U.S.C.A. § 801, and the nature of the plaintiffs' business. The section begins with a definition of the terms "common carrier by water in foreign commerce" and "common carrier by water in interstate commerce." It then defines "common carrier by water" as meaning either of such previously defined

common carriers. Next follows the definition which has given rise to the present litigation: "The term 'other person subject to this Act' means any person not included in the term 'common carrier by water,' carrying on the business of forwarding or furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier by water."

There is no substantial dispute as to the plaintiffs' business activities. The complaint alleges that all of the plaintiffs are engaged in the business of shippers' agents and freight brokers in the Port of New York; they arrange, as agents for others, "for insurance, cartage, warehousing, and other services incidental to and including the affreightment of merchandise consigned to and from points within the United States, from and to points outside thereof"; they do not assume responsibility for delivery of the merchandise at destination. The affidavit of Herbert A. Byrne attached to the motion for an interlocutory injunction describes in greater detail how the business is done. There is nothing before us which contradicts in any essential respect his statements. He makes it clear that the "forwarder" acts solely as agent for the owner of goods in procuring their transportation by a common carrier by water and in performing services incidental to procuring such transportation. Usually the bill of lading is taken in the name of the owner of the goods; occasionally the forwarder may consolidate into one shipment goods of different owners, if the goods are similar in character and bound for the same port and the same consignee, and in the case of such a shipment the bill of lading is taken in the name of the forwarder. But in either case the forwarder's relationship to the owner is that of agent, and his relationship to the carrier is that of shipper's agent or shipper. See Lehigh Valley R. Co. v. United States, 243 U.S. 444, 445, 37 S.Ct. 434, 61 L.Ed. 839.

■ The question for decision is whether the activities above outlined constitute carrying on the business of forwarding "in connection with a common carrier by water." If the forwarder's connection with the carrier need be nothing more than the making of contracts of affreightment, either in the name of the owner of the goods to be transported or in the forwarder's own name, then plainly the plaintiffs are persons subject to the Act. But in our opinion the statutory clause under con-

sideration contemplated a relationship between forwarder and carrier closer than that resulting merely from a contract of affreightment. The Shipping Act was a comprehensive measure intended to subject common carriers by water to substantially the same type of regulation as the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., imposed on interstate common carriers by land. See United States Nav. Co. v. Cunard S. S. Co., 284 U.S. 474, 480, 52 S. Ct. 247, 76 L.Ed. 408. The incidence of regulation was intended to fall upon the carrier and those who act in connection with it in such a manner as to make possible discrimination between shippers. Some large steamship companies maintain their own forwarding organizations. See House Report No. 1682, 77th Congress, 2d Session. Such an organization may take the form of a corporation subsidiary to or otherwise affiliated with the carrier, or may be an independent forwarder to whom the carrier pays compensation as an inducement to ship by its line, as in Lehigh Valley R. Co. v. United States, 243 U.S. 444, 37 S.Ct. 434, 61 L.Ed. 839. Where the relationship between carrier and forwarder is of such a character, regulation of the forwarder is an appropriate and perhaps necessary means of preventing discrimination. But where the relationship of the forwarder to the carrier is only that of consignor or shipper's agent regulation of the forwarder is not necessary, since the provisions forbidding the carrier to discriminate between shippers will suffice. Similar considerations apply with respect to those who furnish "wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier by water." Such facilities are customarily furnished under some form of continuing contractual or other relationship with the common carrier by water which may result in discrimination against or unfair advantage to shippers, if those who furnish the facilities are not regulated. Such was the case in State of California v. United States, D.C. Cal., 46 F.Supp. 474, now pending in the Supreme Court, 63 S.Ct. 980,[2] the only authority brought to our attention which has construed the phrase in question. We do not believe that the Shipping Act was intended to extend to the regulation of the rates and practices of independent forwarders or furnishers of terminal facilities, who perform services solely for the ship-per and at his expense and whose dealings with the carrier are limited to contracting for transportation at the carrier's established rates. Compare Lehigh Valley R. Co. v. United States, 243 U.S. 444, 37 S.Ct. 434, 61 L.Ed. 839, where forwarding services of the same character as those rendered by the present plaintiffs were held not to be "connected with such transportation" within the meaning of that phrase as used in section 15(13) of the Interstate Commerce Act, 49 U.S.C.A. § 15(13). The construction of the Shipping Act for which the defendant contends would expand the regulation beyond anything heretofore asserted. Even the recent Act, 56 Stat. 284, 49 U.S.C.A. § 1001 et seq., bringing domestic freight forwarders within the jurisdiction of the Interstate Commerce Commission excludes by definition forwarders who assume no responsibility for the transportation of the merchandise.

For the foregoing reasons the complaint in so far as it seeks an injunction against the order of August 21st is dismissed; an interlocutory injunction against enforcement of the order of May 18, 1943, is granted; and the defendant's motion for summary judgment is denied. Either party may submit proposed findings of fact on five days' notice to the other.

### On Motion for Reargument

This motion asks a modification of our opinion of November 30, 1943 in so far as it denied the defendant a summary judgment and granted the plaintiffs an interlocutory injunction against enforcement of the Commission's order of May 18, 1943. Argument of the motion was heard on December 16, 1943 and the matter was taken under advisement with leave to the attorneys to file briefs. A brief has been filed on behalf of the plaintiffs. On February 19, 1943 counsel for the defendant advised the court that he did not desire to file a brief on behalf of the defendant.

Our former decision in this case was rested upon the ground that the plaintiffs were not shown to be carrying on the business of forwarding "in connection with a common carrier by water." The opinion stated that there was nothing before the court to contradict in any essential respect the Byrne affidavit which made clear that a forwarder "acts solely as agent for the owner of goods in procuring their transportation by a common carrier by water

---

[2] Affirmed 320 U.S. 577, 94 S.Ct. 352.

and in performing services incidental to procuring such transportation." Mr. Hallett's affidavit in support of the motion for reargument asserts that we overlooked certain evidence, not called to our attention upon the original argument or in the briefs then filed, which shows that the plaintiffs' activities are not limited solely to acting as agents for shippers. This evidence is to be found in five volumes containing answers to questionnaires filed with the Commission by numerous forwarders, including the plaintiffs, and submitted to the court on the argument of the original motions. It relates to two matters: (1) "contract rates" and (2) brokerage.

■ (1) Contract rates. Question 22 of the questionnaire requires information as to whether the forwarder who answered the question signed contracts with steamship conferences or conference carriers entitling him to contract rates. Mr. Hallett's affidavit states that 45 of the plaintiffs (without specifying which plaintiffs) made answers indicating that they did enter into such contracts. By their answer to question 23, most of the plaintiffs, Mr. Hallett says, professed to give the shipper the benefit of the contract rate but he names three plaintiffs who did not always do so. We find no copy of a contract for "contract rates" in the record. The terms of such contracts and their implications have not been submitted to us; they can be developed upon final hearing. Without knowing more we cannot say from the mere fact that some of the plaintiffs entered into contracts for contract rates, that they were conducting their forwarding business "in connection with a common carrier" in such sense as to justify a summary judgment for the defendant. Nor is it clear to us what bearing on this question the ultimate enjoyment of contract rates, by the shipper or by the forwarder, might have. That too may be elucidated on a full hearing of the cause.

■ (2) Brokerage. From the answers to questions 29, 30 and 31 of the questionnaire it appears that every plaintiff receives a commission or brokerage fee from the carrier with respect to shipments for which he acts as forwarder; all but six do this in cases where they make the shipments in their own names as shipper on the bill of lading; and every plaintiff collects forwarding fees from the shipper on the same shipment on which it collects brokerage from the carrier. Some of the plaintiffs say that their forwarding fees are based on the assumption that they will collect 1¼% brokerage on ocean freight. Hence the defendant argues that receipt of brokerage from the carrier, where broker and forwarder are one, shows that each plaintiff carries on the business of forwarding in connection with a common carrier by water and is therefore within the statutory definition of 46 U.S.C.A. § 801. The plaintiffs answer that payment of brokerage is provided for in the carriers' tariffs, and that the legality of the practice has been recognized by the Commission in Gulf Brokerage and Forwarding Agreements, 1 U.S.M.C. 533. This was a proceeding concerning 92 agreements filed for approval under § 15 of the Shipping Act, 46 U.S.C.A. § 814, by common carriers by water in foreign commerce and other persons termed brokers. The agreements purported to fix the amounts of commissions the carriers would pay such other persons for brokerage services, and also the amounts of the charges to be collected from shippers for forwarding services to be performed by the carriers and such other persons. An order was entered denying approval of the proposed agreements and discontinuing the proceeding without prejudice to the filing of new agreements as indicated in the opinion. The opinion states: "Brokers are not subject to the Shipping Act of 1916 and consequently agreements between carriers subject to that Act and brokers are not of the character required to be filed under § 15 thereof."

The mere receipt of brokerage from a carrier by one who is also a forwarder connotes no contract between the payor and payee other than that which arises out of the contract of affreightment. There is no implication that the forwarder agrees with the carrier to refuse to handle shipments as to which the shipper has specified routing by a competing carrier (which as the Commission noted in the opinion just discussed, it would not approve). We do not think the receipt of brokerage pursuant to a carrier's filed tariff proves that the forwarder who receives it carries on the business of forwarding "in connection with the carrier."

The evidence called to our attention by the motion for reargument does not justify the granting of a summary judgment for the defendant. Consequently we adhere to our former opinion and for the reasons therein stated think that an interlocutory injunction should be granted the plaintiffs.