DEATON TRUCK LINE, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN & HELPERS, LOCAL
UNION 612, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 20791–21332.

United States Court of Appeals
Fifth Circuit.

Oct. 2, 1964.

Rehearings Denied Dec. 21, 1964.

Mark L. Taliaferro, C. V. Stelzenmuller, Birmingham, Ala. (Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., of counsel), for petitioner, Deaton Truck Line, Inc.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Allison W. Brown, Jr., Atty., Washington, D. C., for respondent.

L. N. D. Wells, Jr., David R. Richards, Dallas, Tex., for Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union 612.

Before HUTCHESON and RIVES, Circuit Judges, and GROOMS, District Judge.

RIVES, Circuit Judge.

The employer, Deaton, and the Union, Teamsters, filed separate petitions for review of an order of the National Labor Relations Board which dismissed an unfair labor practice complaint against the

employer. Deaton does not object to the order dismissing the complaint. Its objections are to certain findings and conclusions upon which that order is based.

■ The right to review is limited by section 10(f) of the Act, 29 U.S.C.A. § 160(f), to "Any person aggrieved by a *final order* of the Board." (Emphasis added.) The same section limits the court's function to "enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the *order* of the Board." (Emphasis added.) The court has no jurisdiction of Deaton's petition for review because Deaton is not a party aggrieved by the Board's *order*.[1] The petition for review in No. 20,791 is therefore dismissed.

The Board found that Deaton's refusal to bargain was not violative of section 8(a) (5) of the Act, 29 U.S.C.A. § 158(a) (5), because the Union insisted upon the inclusion of some twenty or more multiple truck owner-drivers in the bargaining unit, who the Board held were supervisors within the meaning of the Act, and that Deaton was under no duty to bargain with a unit which included supervisors. Upon such findings and conclusions, the Board dismissed the complaint against Deaton.

The Board stated its reasons for assigning the status of supervisors to the multiple owner-drivers, as follows:

"The record clearly establishes that multiple owner-drivers have the power to hire and fire drivers of their trucks. Not only do nonowner drivers in the Deaton fleet have to meet with Deaton's preliminary approval and cannot be hired without such approval, they also have to meet with the approval of, and are, in effect, hired by the owner of the truck. Moreover, the multiple owner-drivers assign drivers to trucks and transfer them from one truck to another without the knowledge and consent of Deaton. They can also fire drivers insofar as driving their trucks is concerned, but in such circumstances the driver remains in the pool and can be selected by another multiple owner-driver, without need of further clearance by Deaton. Under these circumstances we find that the multiple owner-drivers, possessing the power substantially to effect the hire and discharge of employees, are supervisors within the meaning of the Act."

Neither Deaton nor the Union agrees. Deaton contends that all of the owner-lessors are independent contractors and not employees of Deaton.[2] On this contention the Board concluded its discussion as follows:

"The Board, in conformity with Congressional intent, has followed the usual tests of the law of agency and has applied the common law 'right of control' test. Under this test, an employer-employee relationship exists where the person for whom the services are performed reserves the right to control not only the end to be achieved, but also the means to be used in reaching such end. Consistent with this Congressional mandate, and having in mind the judicial dictate that social legislation be construed 'in the light of the mischief to be corrected and the end to be attained,' we feel compelled to reach a different conclusion from that of the Trial Examiner and find that the drivers, including own-

---

1. See Federal Power Comm'n v. Hope Natural Gas Co., 1944, 320 U.S. 591, 618, 619, 64 S.Ct. 281, 88 L.Ed. 333; Shannahan v. United States, 1938, 303 U.S. 596, 599, 58 S.Ct. 732, 82 L.Ed. 1039; United States v. Los Angeles & S. L. R.R., 1927, 273 U.S. 299, 309, 310, 47 S.Ct. 413, 71 L.Ed. 651.

2. While the ruling was favorable to Deaton, Deaton's disagreement with the rea-

soning is so basic that we think the court should decide the question of such obvious importance to Deaton's labor-management relations. See International Brotherhood, etc. v. Deaton Truck Line, Inc., 5 Cir. 1962, 307 F.2d 748; Deaton Truck Line, Inc. v. Local Union 612, etc., 5 Cir. 1962, 314 F.2d 418; see also NLRB v. Air Control Products, 5 Cir., 335 F.2d 245.

er-drivers and multiple owner-drivers, are employees of Deaton.[7] We

"7. The Alabama Supreme Court has reached the same conclusion. Stevens v. Deaton Truck Line, Inc., 256 Ala. 229, 54 So.2d 464 (1959); Deaton Truck Line, Inc. v. Acker, 261 Ala. 468, 74 So.2d 717 (1954); Hays v. Deaton Truck Line, Inc., 264 Ala. 442, 87 So.2d 825 (1956).

are satisfied that the degree of control exercised by Deaton over these individuals as shown in part by the collective-bargaining history, is sufficient to support a finding that they are employees of Deaton both in law and as a 'matter of economic reality.' As such they are entitled to the rights guaranteed and protection afforded by the Act."

We agree with that conclusion and with the findings upon which it is based.

The Union argues that the supervisory authority of the multiple owner-drivers over other drivers of their trucks is to be exercised in the interest of the multiple owner and not in the interest of the employer, Deaton, as required by the statutory definition of supervisor.[3] The evidence is undisputed that a multiple owner-driver is free to accept or reject any applicant seeking to drive one of its trucks, subject only to the restriction that the applicant be a member in good standing of Deaton's reserved pool of qualified drivers. All drivers handle cargo exclusively for Deaton, in trucks bearing Deaton's name. Granted that the supervisory authority is to be exercised in the interest of the multiple owner, such interest is so intertwined with the interest of Deaton in the successful and efficient operation of the trucks that it cannot be denied in most instances of actual execution the supervisory authority is in the interest of both Deaton and

3. "The term 'supervisor' means any individual having authority, *in the interest of the employer*, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effec-

of the multiple owner. We have not overlooked the other contentions of the Union, but find them to be without merit, and see no useful purpose to be served by prolonging this opinion. We are in agreement with the Board's findings upon which it soundly based the conclusion that Deaton was under no duty to bargain with the unit upon which the Union insisted. The petition for review in No. 21,332 is therefore denied.

tively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C.A. § 152(11). [Emphasis supplied.]