**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, a Massachusetts corporation, Plaintiff-Appellant,**

v.

**WEBCOR, INC., an Illinois corporation, Defendant-Appellee.**

**No. 13769.**

United States Court of Appeals Seventh Circuit.

Dec. 17, 1962.

702

James A. Velde, Chicago, Ill., Robert A. Gardner, Jr., Ware Adams, Chicago, Ill., Gardner, Carton, Douglas & Chilgren, Chicago, Ill., of counsel, for appellant.

Maxfield Weisbrod, Robert M. Woodward, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In a diversity suit brought by John Hancock Mutual Life Insurance Company, a Massachusetts corporation, plaintiff, its complaint seeking a declaratory judgment against Webcor, Inc., an Illinois corporation, defendant, was on motion of defendant dismissed. Plaintiff has appealed.

The only facts presented in this case are those contained in the complaint, which asks for an adjudication that the termination date of a warrant delivered by Webcor (defendant) to Hancock (plaintiff) and entitling the holder to purchase 15,750 shares of Webcor stock, was extended to July 31, 1968 and the purchase price therefor was reduced from $13 to $11 a share, pursuant to a letter agreement between the parties.

The facts alleged in the complaint and the exhibits attached to it, which have all been admitted by the motion to dismiss, follow:

On October 21, 1958 Hancock and Webcor entered into a "note agreement" in which Hancock agreed to buy a $700,000 note and a stock purchase warrant to be issued by Webcor. Under the note agreement Hancock agreed to accept Webcor's 5½% note for the principal sum of $700,000 due July 1, 1967 together with a warrant entitling it to purchase 15,750 shares of Webcor common stock.

The note agreement provided for prepayment of the note and imposed obligations on Webcor to maintain its properties, keep them insured, maintain modern accounting systems for itself and its subsidiaries, etc. Paragraph 8.4 of the agreement provided in effect that Webcor should not pay dividends on its capital stock in excess of $400,000 except out of earnings accrued since December 31, 1957. The agreement stated that it was delivered and intended to be performed in Illinois and should be construed, enforced and governed by Illinois law.

The $700,000 note was issued by Webcor and delivered to Hancock on October 28, 1958 pursuant to the note agreement. The note was payable on July 1, 1967, but subject to earlier prepayment, and provided for interest at 5½% until maturity. At the same time Webcor delivered to Hancock an instrument entitled "Common Stock Purchase Warrant". The warrant stated that Hancock was entitled to purchase 15,750 shares of Webcor's common stock from Webcor at $13 per share. The period for exercising the warrant was stated in the first paragraph as

"* * * on or before the later of August 23, 1961, or the Termination Date (as hereinafter defined), but not thereafter, * * *."

The second paragraph stated,

"The 'Termination Date' shall be the later of, the date of the final payment of the 5½% Notes of the Company due July 1, 1967, or if prior to the date of final payment of the

Notes, holders of Warrants shall elect to proceed \* \* \*."[1]

Webcor at various times committed breaches of the note agreement by paying cash dividends to stockholders in excess of the amounts permitted by the agreement, thereby entitling Hancock to declare the note due and payable forthwith. As a result, Webcor's ability to obtain its customary credit in the normal course of its business was threatened with impairment. If Hancock had declared the note due and payable forthwith, Webcor's ability to obtain credit would have been severely impaired. Instead of declaring the note due, Hancock agreed to waive the defaults if Webcor would agree to changes in the interest rate on the note, the term and exercise price of the warrant, and certain provisions of the note agreement. These changes were incorporated in an agreement which took the form of a letter dated March 1, 1960 from Hancock to Webcor. It was signed by Hancock by an assistant treasurer. It was also signed by Webcor by its executive vice-president, John H. Ihrig, with the authority of Webcor's board of directors.

We fully reproduce this letter:

"March 1, 1960

"Webcor, Inc.
5610 West Bloomingdale Avenue
Chicago 39, Illinois

"Attention: Mr. John H. Ihrig, Executive Vice President

"Gentlemen:

"On March 1, 1960 the Committee of Finance of this company voted to authorize certain amendments to the Note Agreement dated October 21, 1958, the 5½% Note due 1967, and the Common Stock Purchase Warrants of Webcor, Inc., all of which we hold. This vote is contingent on similar amendments, to the extent applicable, to the Note Agreement, Note, and Common Stock Purchase Warrants held by State Mutual Life Assurance Company.

"The amendments and/or consents and the consideration therefore rendered by the company are substantially as follows:

"1) We hereby agree to waive the default or defaults under said Note Agreement which have occurred as a result of the payment of dividends by Webcor, Inc. in 1959.

"2) We hereby agree that short-term borrowing of the company for working capital purposes in the ordinary course of business may be increased from $2,500,000 to $3,500,000 until February 28, 1961.

"3) Webcor, Inc. hereby agrees that the interest rate on the Note will be increased from 5½% to 6%, effective as of this day.

"4) Webcor, Inc. hereby agrees that the purchase price of the Common Stock under the terms of the Common Stock Purchase Warrant shall be reduced from $13.00 to $11.00 per share.

"5) Webcor, Inc. hereby agrees that the Common Stock Purchase Warrants shall be valid until July 31, 1968.

"6) Webcor, Inc. hereby agrees that Dividends and Distributions will be payable only from earnings accrued subsequent to December 31, 1959, and then only if Net Working Capital shall not be reduced to less than $6,600,000.

"7) Webcor, Inc. hereby agrees that short-term borrowing for working capital required in the performance of defense production contracts shall not exceed $2,500,000.

"Except as in this instance specifically provided, these amendments in no way operate as amendments to consents under or waiver of any pro-

---

[1]. The contingency here referred to, but by us indicated only by asterisks, is not relevant in this case.

visions of the aforementioned instruments, all the provisions of which shall remain in full force and effect.

"The foregoing revisions are subject to the execution of amending agreements and other instruments satisfactory in all respects to the Law Department of this company and to its Special Counsel, and to the consummation of the transactions within a reasonable time hereafter.

"We are not attempting in this letter to prepare the definitive amending agreements or otherwise to define all the terms, but will refer the matter to Special Counsel, all of whose fees and other expenses, as is customary in these transactions, are to be paid by the Company.

"If the above terms are in accordance with your understanding, we would appreciate their confirmation in writing by signing and returning the enclosed counterpart of this letter.

"Very truly yours,
JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY,
By WILLIAM P. RIPLEY
*Assistant Treasurer*

"Accepted and agreed to:
WEBCOR, INC.
By JOHN H. IHRIG
(Per Board of Directors)'

Thereupon, Hancock, at Webcor's request, informed Dun & Bradstreet that Hancock had waived its right to the accelerated maturity of the note, thereby assuring Webcor the customary credit accorded to it in the normal course of its business.

On August 26, 1960 Webcor wrote Hancock a letter which referred to Webcor's "default occasioned by the payment of such dividends" and stated that, in consideration of the waiver by Hancock of any rights to declare the note due and payable by reason thereof, Webcor agreed to specified, detailed amendments which were however different from the March 1, 1960 agreement prepared by Hancock. Thus, Webcor's proposal would have

changed the provision for termination date of the warrant to read:

"The 'Termination Date' shall be (a) August 23, 1961, if prior to that date the Company shall prepay in full all of its outstanding 5½% (now 6%) Notes due July 1, 1967 * * * or, if such Notes are not so prepaid prior to said date, then (b) July 31, 1968. * * *"

Hancock did not accept the tendered changes of August 26, 1960.

On September 26, 1960 Webcor prepaid the note.

On January 20, 1961, Hancock made a demand on Webcor, stating that Webcor by the March 1, 1960 letter had agreed to extend the date of the warrant to July 31, 1968 and reduce the purchase price of the stock from $13 to $11. The letter requested the furnishing of a rider to the warrant (or a new warrant) in accordance with the March 1, 1960 letter. Webcor refused on February 22, 1961 by a letter which said that, because of Hancock's refusal to accept Webcor's proposal of August 26, 1960, the stock warrant was exercisable only on or before August 23, 1961 at $13 per share.

The district court gave no reasons for its action and we are required in this court to consider in support thereof the arguments made in Webcor's brief, and *contra* the counterarguments presented by Hancock's briefs.

There is no disagreement by the parties as to the contested issues to be determined on this appeal. Although the parties do not list them in the following order, they are:

(1) Whether the complaint alleges an actual controversy between the parties entitling plaintiff to a remedy under the Declaratory Judgment Act or otherwise.

(2) Whether the complaint sets forth a right to relief under any state of facts that could be proved by plaintiff.

(3) Whether the complaint states a claim on which relief can

be granted, a matter which in turn depends upon whether, as the motion to dismiss seems to contend, the complaint reveals as a matter of law that the letter agreement of March 1, 1960 (a) was not a binding contract, or (b) should be interpreted as tying the termination date of the stock purchase warrant to the payment of the note, or (c) is invalid because its terms were not endorsed on the warrant in compliance with an alleged requirement of the Negotiable Instruments Law.

1. It is obvious to us from the facts in this record that, when the suit was filed in the district court, the parties hereto were involved in an actual controversy which was real and substantial. It was and is not hypothetical, abstract, academic or moot. It is a controversy of such a nature that its solution will admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts. This case falls within the purview of 28 U.S.C.A. § 2201. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617.

2–3. We shall now consider whether the complaint for declaratory judgment sets forth a right to relief under any set of facts that could be proved thereunder by Hancock, and whether, as a matter of law, the letter agreement of March 1, 1960 (a) was not a binding contract, or (b) should be interpreted as tying the termination date of the stock purchase warrant to the payment of the note, or (c) is invalid because its terms were not endorsed on the warrant in compliance with an alleged requirement of the Negotiable Instruments Law.

(a) We must decide whether the district court was justified in concluding as a matter of law, without a trial on the facts, that Hancock's letter of March 1,

1960 and its acceptance by defendant did not constitute a binding contract. Such a conclusion is implicit in the court's order dismissing Hancock's complaint on defendant's motion.

The March 1, 1960 letter was sent by Hancock and accepted by Webcor after it had breached the 1958 note agreement which entitled Hancock to declare the note due. This having resulted in a threatened impairment of Webcor's credit in the trade, it undoubtedly was serving its own interests when it accepted the March 1, 1960 offer of Hancock. Webcor now argues that this letter and acceptance "was nothing more than a proposed settlement and adjustment of factors which plaintiff contended were violations or breaches of the note agreement dated October 21, 1958."

The fact is that the March 1, 1960 letter expressly recognized that its revisions were subject to the preparation of definitive amending agreements and other instruments satisfactory to Hancock's counsel. These were referred to in the letter as "definitive amending agreements or otherwise to define all the terms * * *".

Not only does the language used in the agreement indicate the making of an agreement (Borg-Warner Corp. v. Anchor Coupling Co., 16 Ill.2d 234, 243–244, 156 N.E.2d 513), but Webcor's request to Hancock to inform Dun & Bradstreet of Hancock's waiver of its right to accelerate the maturity of the note, *which was granted by the letter of March 1, 1960,* and Hancock's acceding to Webcor's request by informing Dun & Bradstreet accordingly, constitute a contemporaneous recognition by Webcor that the accepted letter of March 1, 1960, in the minds of the parties, was a binding contract. It is apparent that Webcor, having by its acceptance and approval of the March 1, 1960 letter obtained Hancock's waiver of its admitted defaults, used this fact to strengthen its impaired credit position caused by the payment of dividends in violation of the October 21, 1958 note agreement.

(b) Hancock's March 1, 1960 letter referred to Webcor's note, which was, as has hereinbefore been pointed out, paid on September 26, 1960. The note was payable by its terms on July 1, 1967, but was subject to prepayment. Webcor however argues that upon payment of the note the termination date of the stock purchase warrant became fixed as of August 23, 1961. However that may be, as reflected by the documents as originally executed, the fact remains that the March 1, 1960 letter stated: "Webcor, Inc. hereby agrees that the * * * Warrants shall be valid until July 31, 1968". That letter made no change in the maturity date of the note, which remained July 1, 1967. The provision for extension of the warrant to July 31, 1968, more than a year beyond the maturity date of the note, alone shows that the parties intended that the warrant would still be valid in the hands of Hancock or its transferees even though the note had been paid.

We note that in its brief defendant urges "that it is not what plaintiff says in its complaint as to the acceptance of the payment of the note as not amounting to a waiver of the provision of the letter of March 1, 1960 * * * which is controlling, but rather the conduct and action of the plaintiff when it accepted the payment." Obviously if defendant desired an opportunity to prove the conduct and action of Hancock when it accepted payment of the note, it should have filed an answer laying the basis for such evidence.

(c) Webcor in its brief quotes from its stock purchase warrant issued to Hancock:

"This Warrant is issued on the express condition to which the holder and each successive holder hereof by accepting the same agree, that title hereto is transferable in the same manner and with the same effect as in the case of a negotiable instrument by delivery hereof by any person in possession of the same if endorsed in blank or if delivered to a specified person if endorsed to such person, and all persons dealing herewith shall be entitled to treat the registered holder hereof or, if the Warrant be endorsed in blank, the bearer hereof, as the absolute owner for all purposes and shall not be affected by any notice to the contrary."

Because of this provision, Webcor argues that "the warrant was a full and complete instrument in itself and was in no manner aided by or dependent on the note agreement." It adds that the warrant "having been designated as a negotiable instrument then by reason of such provisions the terms, provisions and conditions thereof may not be modified, changed or varied by any subsequent undertaking or agreement not endorsed on the warrant."

In its brief it characterizes the warrant as "in effect, a negotiable instrument", but it cites no authorities in support of this contention. It even admits that the warrant lacks an unconditional promise to pay a sum certain in money (which is an essential element of a negotiable instrument). § 1 Negotiable Instruments Law; § 21, ch. 98, Ill.Rev. Stat. (1961).

To sustain its argument Webcor relies on the language in the stock purchase warrant that it "was transferable in the same manner" as a negotiable instrument. Obviously an instrument which is similar to a negotiable instrument in only one respect is not therefore a negotiable instrument.

Even if it were a negotiable instrument, neither party is in a position analogous to a *holder in due course*, because originally Webcor was the maker and Hancock was the other party to the instrument. There has been no negotiation to any transferee whatsoever.

We hold that the Negotiable Instruments Law is inapplicable to the case before us.

For all of these reasons, we are constrained to reverse the order of the district court dismissing plaintiff's complaint. We feel, however, that, to the

end that complete justice be done, this cause should be remanded for further proceedings, including the granting of permission to defendant to answer the complaint, if it sees fit, and for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded with directions.