NATIONAL VAN LINES, INC., et al., Plaintiff-Appellants,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants-Appellees.

No. 14246.

United States Court of Appeals Seventh Circuit.

Jan. 6, 1964.

Gardner, Carton, Douglas & Chilgren, Chicago, Ill., of counsel.

James L. Beattey, Jr., Indianapolis, Ind., for Aero-Mayflower Transit Co.

Robert J. Bernard, Chicago, Ill., for Greyhound Van Lines.

G. Zan Golden, Ft. Wayne, Ind., for North American Van Lines.

G. M. Rebman, St. Louis, Mo., for United Van Lines.

James A. Velde, Ware Adams, Chicago, Ill., Bryce Rea, Jr., Washington, D. C., for plaintiffs-appellants.

Lionel Kestenbaum, Gerald Kadish, Appellate Section, Dept. of Justice, Washington, D. C., Frank E. McDonald, U. S. Atty., Chicago, Ill., Robert W. Ginnane, Interstate Commerce Commission, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., James P. O'Brien, U. S. Atty., Northern Dist. of Ill., Chicago, Ill., Arthur J. Cerra, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for appellees.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiffs-Appellants[1] brought this action seeking judicial review in the

---

[1.] Plaintiffs in this action are Allied Van Lines, Inc., a Delaware corporation; Bekins Van Lines Co., a Nebraska corporation; Fernstrom Storage and Van Company, an Illinois corporation; Greyhound Van Lines, Inc., an Indiana corporation; National Van Lines, an Illinois corporation; Aero-Mayflower Transit Co., Inc., an Indiana corporation; Burnham Van Service, Inc., a Georgia corporation; North American Van Lines, Inc., an Indiana corporation; United Van Lines, Inc., a Missouri corporation; Wheaton Van Lines, Inc., an Indiana corporation;

Household Goods Carriers' Bureau, a not-for-profit corporation, incorporated in the District of Columbia, having 1,700 members; and all other persons or parties who were parties to Interstate Commerce Commission tariffs Nos. MF 83, 89, 90, 91, and 92, and who were made respondents to proceeding No. 33622, begun by the Interstate Commerce Commission on December 5, 1960, to remove any uncertainty concerning the applicability of the above-numbered tariffs to certain motor carriers of household goods.

district court of certain orders of Interstate Commerce Commission, naming as defendants therein United States of America and Interstate Commerce Commission (appellees).

Defendants filed a motion to dismiss the complaint on the grounds that there was no justiciable controversy and that the Commission's interpretative ruling was advisory in nature and not a final reviewable order.

The district court granted defendants' motion to dismiss and ordered the complaint dismissed, without opinion. Plaintiffs appealed.

### FACTUAL BACKGROUND

The factual background of this litigation is not in dispute and we accept the following summary in appellees' brief.

The dispute arose because of the inadvertent omission of a footnote to a tariff. Prior to September 1959, the appellants had on file with the Commission tariffs which provided a rate table in Section II for shipment of ordinary household goods for distances up to 4300 miles between all points in the United States. It was stated in Section II that the rates in the 4300 mile table "will not apply in territory described in Section III * * * except as otherwise described in Section III." Section III contained a rate table for shipments from certain points of origin in the northeast section of the country for distances up to 500 miles. The rates in Section III were higher than rates for the first 500 miles in the 4300 mile table of Section II. At the end of the 500 mile table in Section III was a footnote reading "over 500 miles apply rates shown in Section II." Thus under these 1957 tariffs, on shipments of more than 500 miles from the origin points of Section III, the carriers assessed charges computed by application of the 4300 mile table of Section II. Absent the footnote in Section III, the charge for these shipments would have

been computed on the basis of Rule 23 of the tariff and the 500 mile table and the charges on these shipments would have been lower.

In September 1959, these tariffs were canceled and other tariffs were filed in their place to go into effect on October 10, 1959. The governing provisions of these 1959 tariffs were the same as those in the 1957 tariffs, but many increases were made in the rate tables. The footnote to the 500 mile rate table in Section III making cross reference to Section II for shipments over 500 miles was, through inadvertence, omitted. The carriers, however, continued to make charges on shipments over 500 miles from origins of Section III computed by application of the 4300 mile table of Section II as if the footnote had not been omitted. In November 1959, the omission of the footnote was discovered by appellant Household Goods Carriers' Bureau and on December 30, 1959 the footnote to Section III was reinserted to become effective on January 29, 1960.

### COMMISSION PROCEEDING.

On December 5, 1960, the Commission on its own initiative ordered the institution of an investigation to determine whether certain motor common carriers of household goods during various periods between February 19, 1959 and September 1, 1960, had charged, demanded, collected or received compensation for the transportation of shipments in excess of 500 miles from points of origin which were greater or less than, or different from, the rates applicable thereto as specified in the governing tariffs. The limiting period is the time during which the footnote in prior tariffs was inadvertently omitted from the 500 mile table as filed in 1959.

The order recited that this investigation was taken "under authority of Section 5(d) of the Administrative Procedure Act [2] and Sections 204(c), 204(a)

---

2. Section 5(d) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(d) (1950), provides: "The agency is authorized in its sound discretion, with like effect as in the case of other orders, to issue a declaratory order to terminate a controversy or remove uncertainty."

(6) and 217(b) of the Interstate Commerce Act [3] *to remove any uncertainty with respect to the applicability of the provisions of the said tariffs, as amended."* (Emphasis added.)

All carriers which were parties to the tariffs during the critical period were made respondents to the proceeding. They were ruled to show cause why appropriate declaratory or other orders should not be issued.

The purpose of the Commission's investigation was to determine whether, during the periods when the footnote was missing, the 4300 mile table continued to apply to shipments originating in the northeast section of the country for distances of more than 500 miles. If the 4300 mile table did not apply to those shipments, then Rule 23 of the tariffs applied beyond the 500 miles and produced charges much lower than the 4300 mile table.

The Commission referred the matter to an examiner for hearings which were held in March, 1961.

Witnesses for the Commission and for the carriers testified concerning the meaning and factual background of the tariffs. They estimated that, if Rule 23 rather than the 4300 mile table applied to the disputed shipments, four of the carriers would be liable for overcharges totaling $2,703,631 during the periods when the investigated tariffs were in effect.

No report, intermediate decision or recommendations were filed by the hearing examiner.

### COMMISSION REPORT.

On February 7, 1962, the Commission filed its report for six of the eleven commissioners. Five commissioners dissented, four on the merits. The majority ruled that, with the footnote to the 500 mile table omitted, shipments of more than 500 miles from the northeast section of the country were governed, not by the 4300 mile table, but by the 500 mile table, together with Rule 23. The majority report concluded that the carriers had "failed to collect charges in conformity" with the Commission's interpretation of the tariffs and that collection of more or less than the Commission's basis "constitutes a violation of section 217(b) of the Interstate Commerce Act." This report was published in Applicability of Rates on Household Goods, 315 I.C.C. 537 (1962).

### COMMISSION ORDER.

On February 7, 1962, the Commission entered an order adopting the Commission report as its findings and conclusions, as follows:

"No. 33622 APPLICABILITY OF RATES ON HOUSEHOLD GOODS

*"It appearing,* That by order dated December 5, 1960, the Commission entered upon an investigation to determine whether certain motor carriers of household goods during various periods between February 19,

---

3. Relevant provisions of the cited sections of the Interstate Commerce Act, 49 U.S. C.A. § 304 and § 317 (1963), are as follows:

Section 204(a) (6): "It shall be the duty of the Commission * * * (6) To administer, execute, and enforce all provisions of this chapter, to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedure for such administration; * * *"

Section 204(c):

"* * * upon its own initiative without complaint, the Commission may investigate whether any motor carrier * * * has failed to comply with any provision of this chapter, or with any requirement established pursuant thereto. If the Commission, after notice and hearing, finds upon any such investigation that the motor carrier * * * has failed to comply with any such provision or requirement, the Commission shall issue an appropriate order to compel the carrier * * * to comply therewith. * * *"

Section 217(b):

"No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; * * *"

1959, and September 1, 1960, had charged, demanded, collected or received compensation for the transportation of shipments in excess of 500 miles from described points of origin which were greater or less than, or different from, the rates applicable thereto as specified in the governing tariffs;

"*It further appearing*, That a full investigation of the matters and things involved in the above-mentioned proceeding has been made, and that the Commission, on the date hereof, has made and filed a report containing its findings of fact and conclusions thereon, which report is referred to and made a part hereof:

"*It is ordered*, That this proceeding be, and it is hereby discontinued."

Subsequent petitions to vacate the order and remand to the examiner for preparation of a report and recommended order and for other relief were filed by the carriers and denied by the Commission. Finally, on June 15, 1962, petitions for reconsideration were denied.

### DISTRICT COURT PROCEEDING.

On August 30, 1962, appellants instituted this present action in the district court seeking to set aside the Commission orders of February 7, 1962 and June 15, 1962.

The complaint alleged that hundreds of carriers were participants in the tariffs involved and that the action was brought on their behalf as well as the plaintiffs'. The Commission orders were alleged to be arbitrary and invalid in law on the grounds, *inter alia*, that (1) the ruling of the Commission was contrary to the plain meaning of the tariffs; (2) the Commission's interpretation of the tariffs involved only a question of law and was legally wrong; (3) the Commission's ruling was contrary to the undisputed and substantial evidence concerning the intended and expressed meaning of the tariffs and to settled legal principles for the construction of tariffs;

and (4) the effect of the ruling would bring about unreasonable and absurd results that would cause the rates in the tariffs to become discriminatory and unlawful.

It was shown in the district court by affidavits that subsequent to the Commission order in question the General Accounting Office of the United States had notified certain carriers that deductions would be made for overcharges based on the Commission's interpretation of the tariff. Pursuant to notice by the GAO, the Government made deductions on charges for shipments thereafter by the carriers for the Government.

The amounts of such deductions for three of the appellants as of certain dates in December, 1962 and January, 1963 (less than one year after the Commission ruled) were $32,497.89 for Allied Van Lines, $25,624.29 for North American Van Lines and $36,328.74 for United Van Lines.

Appellees' motion to dismiss on the grounds hereinbefore stated, viz: no justiciable controversy and that the Commission ruling was interpretative and advisory only and was not a final reviewable order, was briefed and argued by both sides and finally granted by the district court. The district court did not state its reasons for the dismissal.

In this posture of the case, we are not concerned with the merits of appellants' complaint. The trial court did not reach that question.

The sole question before us is whether the district court erred as a matter of law in dismissing the complaint on the ground that the Commission order is not reviewable.

■ While the district court gave no reasons for entering the order dismissing the "complaint," we shall treat this as a final appealable order. We have held "that where a plaintiff prosecutes an appeal from an order of dismissal of the complaint, he thereby elected to stand on the complaint and waived any right to request leave to amend." Wallingford v. Zenith Radio Corporation, 7 Cir., 310

F.2d 693, 696 (1962). To the same effect are Duane v. Altenburg, 7 Cir., 297 F.2d 515, 518 (1962); and Asher v. Ruppa, 7 Cir., 173 F.2d 10, 11–12 (1949). See, John Hancock Mutual Life Ins. Co. v. Webcor, Inc., 7 Cir., 311 F.2d 701, 704 (1962).

We are concerned here with the ultimate question of whether the orders and findings entered by the Commission are *judicially* reviewable. Since we have no question of exhaustion of administrative remedies before us, our inquiry is directed to a determination of whether the action of the Commission is ripe for review.[4]

It is obvious that the findings and resulting orders were declaratory in nature. They followed an adversary proceeding in which the critical question for determination was sharply disputed.

The Commission sought by its investigation to remove any uncertainty with respect to the applicability of the provisions of the tariffs under consideration because of the admittedly inadvertent omission of a footnote to a tariff. It ruled against respondents in the administrative proceeding and found certain past charges made contrary to such ruling to be "a violation of section 217(b) of the Interstate Commerce Act." It then ordered the proceeding discontinued which, following denial of rehearing, constituted a final order.

The question of the ripeness of the Commission order for judicial review lies in that gray area of decisional uncertainty in which the standards for review have not been sharpened with finality. We shall, therefore, briefly review the course charted by such varying landmarks as are available to us.

The Commission's basic argument is that the Commission order is not subject to judicial review because it had no adverse legal impact on appellants. It contends that Commission actions are subject to judicial review only when they impose an obligation, deny a right or fix some legal obligation.

The Commission relies heavily on United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651 (1927). There the Supreme Court held unreviewable a final determination on a finding by the ICC of the value of the railroad's property. Judicial review of this determination was sought in the district court under the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 219 and the general equity jurisdiction of the court. The valuation made could be used as prima facie evidence in Commission and judicial proceedings. In denying review, the Court made the following often quoted statement:

"The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees. It is the exercise solely of the function of investigation." Id. 273 U.S. at 309, 310, 47 S.Ct. at 414–415, 71 L.Ed. 651.

In Shannahan v. United States, 303 U.S. 596, 58 S.Ct. 732, 82 L.Ed. 1039 (1938), the Supreme Court followed Los Angeles and denied review of an ICC finding that plaintiff was not a street, interurban or suburban electric railway within the exemption provisions of the Railway Labor Act, as amended June 21, 1934, 45 U.S.C.A. § 151, and thus was subject to the provisions of the Act. Again, jurisdiction was sought under

4. See generally 3 Davis, Administrative Law Treatise, Ch. 21, and particularly § 21.07 (1958).

the Urgent Deficiencies Act of 1913. The Court stated:

"\* \* \* Its [the Commission's] decision is not even in form an order. It 'had no characteristic of an order, affirmative or negative.' \* \* \* But even if this difficulty is over-looked, others are insuperable. The decision neither commends nor directs anything to be done. 'It was merely preparation for possible action in some proceeding which may be instituted in the future.' United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 310 [47 S.Ct. 413, 71 L.Ed. 651]." Id. 303 U.S. at 599, 58 S.Ct. at 733–734, 82 L.Ed. 1039.

However, in Shannahan, the Court expressly held open the question of whether "the determination of the Commission is reviewable in a district court by some judicial procedure other than that of the Urgent Deficiencies Act." Id. 303 U.S. at 603, 58 S.Ct. at 735, 82 L.Ed. 1039.

In Shields v. Utah Idaho Cent. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111 (1938), the Supreme Court faced an issue similar to that in Shannahan, decided earlier in 1938. The ICC had determined that plaintiff railroad was not an interurban electric railway under the Railway Labor Act. The railroad sought judicial review in the district court by way of injunction against the United States Attorney for the District of Utah to restrain him from prosecuting any proceeding based upon an alleged violation of the Act.

The district court took jurisdiction, tried the case de novo, decided adversely to the Commission and granted a permanent injunction. The court of appeals affirmed. 10 Cir., 95 F.2d 911. The Supreme Court affirmed on the issue of reviewability, but reversed on other grounds.

On the issue of reviewability, the Court distinguished Shannahan on the ground that review was sought there under the Urgent Deficiencies Act, while in Shields the review was sought in equity. Mr. Chief Justice Hughes, speaking for the Court, said:

"In considering the effect of the Commission's determination, the fundamental question is the intent of Congress. The language of the provision points to definitive action. The Commission is to 'determine.' The Commission must determine 'after hearing.' The requirement of a 'hearing' has obvious reference 'to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.' The 'hearing' is 'the hearing of evidence and argument.' \* \* \* And the manifest purpose in requiring a hearing is to comply with the requirements of due process upon which the parties affected by the determination of an administrative body are entitled to insist. \* \* \* The Commission is not only authorized but 'directed' to give the hearing and make the determination when requested. We cannot think that a determination so prescribed and safeguarded was intended to have no legal effect. \* \* \*" Shields v. Utah Idaho Cent. R. Co., supra 305 U.S. at 182, 59 S.Ct. at 163, 83 L.Ed. 111.

In Shields, it was stated that the "Commission's determination was one of fact," citing Shannahan. Id. 305 U.S. at 181, 59 S.Ct. at 163, 83 L.Ed. 111. The Court went on to find the Commission's determination to be binding on both the carrier and the Mediation Board, and concluded that "[t]he nature of the determination points to the propriety of judicial review." Id. 305 U.S. at 183, 59 S.Ct. at 164, 83 L.Ed. 111.

Professor Davis, in reviewing the foregoing decisions, suggests that, following Shields, there "was established the important proposition that an administrative determination may be ripe for review even though it neither commands nor prohibits but merely declares." [5]

5. 3 Davis, op. cit. supra, § 21.07 at 169.

In Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939), the Supreme Court held reviewable under the Urgent Deficiencies Act a determination by the Federal Communications Commission that a telephone company was subject to its jurisdiction and therefore subject to orders of the Commission. It thus, in effect, rejected Shannahan which had held a status order to be unreviewable under the Urgent Deficiencies Act. The Court said, "It [the order of the Communications Commission] was not a mere abstract declaration regarding the status of the Rochester under the Communications Act, nor was it a stage in an incomplete process of administrative adjudication. The contested order determining the status of the Rochester necessarily and immediately carried direction of obedience to previously formulated mandatory orders addressed generally to all carriers amenable to the Commission's authority. Into this class of carriers the order under dispute covered the Rochester, and by that fact, in conjunction with the other orders, made determination of the status of the Rochester a reviewable order of the Commission." Id. 307 U.S. at 143–144, 59 S.Ct. at 763–764, 83 L.Ed. 1147. This was held to be so, even though the Court then determined that the Rochester could not prevail on the merits.

The instant case is concerned with Part II of the Interstate Commerce Act, 49 Stat. 543, as amended, 49 U.S.C.A. § 301 et seq., which grants the Commission control over motor carriers. Pertinent sections of the Act require such motor carriers to have a certificate of convenience and necessity or a permit issued by the Commission (§§ 206(a), 209(a)), and grants powers of investigation to the Commission to determine whether a motor carrier has complied with the Act and further grants authority for the issuance of an order compelling compliance (§ 204(c)). However, § 203(b) (6) grants an exemption from certificate or permit requirements to certain carriers transporting livestock, fish or agricultural commodities.

Frozen Food Exp. v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956), considered a controversy concerning this "agricultural" exemption. ICC instituted an investigation on its own initiative and followed with an order specifying that certain listed commodities were not "agricultural" within the meaning of § 203(b) (6). A public hearing was held before an examiner. The Government and various producers, shippers and carriers appeared and testified. The Commission decision was in the form of a report and order and concluded with an order that the proceeding "be, and it is hereby discontinued."

Frozen Food Express was not a party to the administrative proceeding. It brought suit in the district court (a three-judge court was convened) for judicial review and injunctive relief, feeling itself aggrieved by the Commission findings and order. The district court dismissed the action, holding the order nonreviewable under United States v. Los Angeles & S. L. R. Co., supra.

The Supreme Court reversed, holding Los Angeles was not controlling and distinguished it. The Court said:

"We disagree with the District Court. We do not think United States v. Los Angeles [& S. L.] R. Co., supra, is controlling here. In that case the 'order' held nonreviewable was a valuation of a carrier's property made by the Commission. The Court held that the 'order' was no more than a report of an investigation which might never be the basis of a proceeding before the Commission or a court. * * *

"The situation here is quite different. The determination by the Commission that a commodity is not an exempt agricultural product has an immediate and practical impact on carriers who are transporting the commodities, and on shippers as well. The 'order' of the Commission warns every carrier, who does

not have authority from the Commission to transport those commodities, that it does so at the risk of incurring criminal penalties. § 222 (a). Where unauthorized operations occur, the Commission may proceed administratively and issue a cease and desist order. § 204(c). Such orders of the Commission are enforceable by the courts. § 222(b). And wilful violation of a cease and desist order is ground for revocation of a certificate or permit. § 212. The determination made by the Commission is not therefore abstract, theoretical, or academic." Id. 351 U.S. at 43–44,[6] 76 S.Ct. at 570–572, 100 L.Ed. 910.

We shall interpolate here to note certain actions taken by the Supreme Court in bridging the gap between Shields (1938) and Rochester (1939) on the one hand and Frozen Food (1956) on the other.

Review of administrative orders was upheld in Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053 (1946); LaCrosse Tel. Corp. v. Wisconsin Employment Relations Board, 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463 (1949); United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). All these cases cite and rely in part, at least, on the holding in Rochester. In several of them, the Government resisted review on grounds similar to those urged in the case at bar.

Review of administrative orders was denied in Federal Power Comm'n v. Hope Nat. Gas Co., 320 U.S. 591, 619, 64 S.Ct. 281, 295–296, 88 L.Ed. 333 (1944), holding the findings under consideration were "the exercise solely of the function of investigation"; and in Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948).

In Jersey Central Power & Light Co. v. Federal Power Comm'n., 319 U.S. 61, 63 S.Ct. 953, 87 L.Ed. 1258 (1943) and Railroad Retirement Board v. Duquesne Warehouse Co., 326 U.S. 446, 66 S.Ct. 238, 90 L.Ed. 192 (1946), the Supreme

6. Appellants' brief calls attention to the following:

"Some interesting questions have arisen as to the reviewability of certain types of declaratory and interpretative orders which the Commission issues with respect to motor carriers. Section 5(d) of the Administrative Procedure Act provides that in cases of 'adjudication' 'The agency is authorized in its sound discretion, with like effect as in the case of other orders, to issue a declaratory order to terminate a controversy or remove uncertainty.' The Interstate Commerce Commission probably has made a more extensive use of declaratory orders than any other federal agency. At the same time, the Commission has asserted a power independent of section 5(d) to issue formal interpretations of the act and of rights and duties under the act, which are difficult to distinguish from declaratory orders as such.

"Starting with United States v. Los Angeles & Salt Lake R. R., one might conclude that such declaratory and interpretative orders were not reviewable. In that case, the Supreme Court held unreviewable an order issued by the Commission under section 19(a) stating a valuation for a railroad's property. * * *

"However, it is generally accepted that the strict standard of reviewability of the Los Angeles case was relaxed in the Supreme Court's 1942 decision in Columbia Broadcasting System, Inc. v. United States, holding that the FCC's chain broadcasting regulations were reviewable at the suit of broadcasting systems whose contracts with individual stations probably would be affected by the impact of the regulations upon the latter. * * *

"While section 5(d) of the Administrative Procedure Act is silent as to whether declaratory orders shall be subject to judicial review, the reports of the Senate and House Judiciary Committees on that act specifically indicate a purpose to make declaratory orders reviewable; also, the Frozen Food Express case strongly indicates that they are reviewable." Giannane & Murray, Judicial Review of Orders of the Interstate Commerce Commission Relating to Motor Carriers, 11 Vanderbilt L.Rev. 1143, 1148–50 (1958). The authors were counsel of the Interstate Commerce Commission.

Court reviewed administrative status orders without considering the question of reviewability.

Following Frozen Food, we come to the recent decision in Pennsylvania R. Co. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960). The rather brief and concise opinion for the Court by Mr. Justice Black strikes close to home in the case at bar.

There the issue involved "the power of District Courts to review Interstate Commerce Commission orders determining the reasonableness of rates." Ibid. The General Accounting Office of the Government, as here, made deductions from payments due the railroad because of allegedly excessive charges on earlier shipments. This arose out of a dispute concerning applicable transportation charges since the Pennsylvania had in effect tariffs for "domestic rates" that were higher than "export rates." The railroad sued in the Court of Claims to recover the amount deducted.

The Court of Claims suspended proceedings to enable the parties to have the ICC pass on the reasonableness of the rates. After hearings, the Commission found and reported that the domestic rates applied by the railroad to certain shipments were unjust and unreasonable, and as to other shipments were just and reasonable. The railroad then filed a separate action in a Pennsylvania district court to enjoin and set aside the adverse part of the order, invoking jurisdiction of the district court under 28 U.S.C.A. §§ 1336, 1398 [7] and 49 U.S.C.A. § 17(9).[8] In the Court of Claims, the railroad moved for a stay until the district court could pass on the validity of the order.

The United States objected to the stay and moved for dismissal or judgment in its favor. The Government urged in support of its motion for judgment "that the order of the Commission did not require anything to be done or not done, that it was therefore an advisory opinion only, and consequently not the kind of 'order' subject to review by 28 U.S.C. § 1336, 49 U.S.C. § 17(9), or any other provision of law." Id. 363 U.S. at 204, 80 S.Ct. at 1132–1133, 4 L.Ed.2d 1165. The Court of Claims refused to stay the case and entered judgment favorable to the Government.

The Supreme Court reversed, stating that "the Railroad has been held bound by the Commission's order although completely denied any judicial review of that order." Id. 363 U.S. at 204, 80 S.Ct. at 1132–1133, 4 L.Ed.2d 1165. The opinion further reads:

"We decided some years ago that while a mere 'abstract declaration' on some issue by the Commission may not be judicially reviewable, an order that determines a 'right or ob-

7. "§ 1336. Interstate Commerce Commission's orders

"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."

"§ 1398. Interstate Commerce Commission's orders

"Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action."

8. "§ 17. Commission procedure; delegation of duties; rehearings

    *     *     *     *     *

"(9) When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commissioner, or a board with respect to any matter assigned or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, by the Commission or an appellate division, a suit to enforce, enjoin, suspend, or set aside such decision, order, or requirement, in whole or in part, may be brought in a court of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, but not otherwise."

ligation' so that 'legal consequences' will flow from it is reviewable. Rochester Telephone Corp. v. United States, 307 U.S. 125, 131, 132, 143 [59 S.Ct. 754, 83 L.Ed. 1147]. The record shows that the Commission order here meets this standard. The Commission found that the Railroad's domestic rates were 'unreasonable' as to 62 shipments. This order is by no means a mere 'advisory opinion,' its 'legal consequences' are obvious, for if valid it forecloses the 'right' of the Railroad to recover its domestic rates on those shipments. We have held that judicial review is equally available whether a Commission order relates to past or future rates, or whether its proceeding follows referral by a court or originates with the Commission. El Dorado Oil Works v. United States, 328 U.S. 12 [66 S.Ct. 843, 90 L.Ed. 1053]." Id. 363 U.S. at 205, 80 S.Ct. at 1133, 4 L.Ed.2d 1165.

Two recent district court cases upheld the reviewability of Commission reports and orders made in aid of pending court actions concerning the reasonableness of past rates and practices. Davidson Transfer & Storage Co. v. United States, D.C.D.Md., 164 F.Supp. 571, 573 (1958) and Eastern Freight-Ways, Inc. v. United States, D.C.D.N.J., 170 F.Supp. 848, 849–850 (1959). Both cases cite § 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9); § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009;[9] United States v. I. C. C., 337 U.S. 426, 69 S.Ct.

1410, 93 L.Ed. 1451 (1949) and Frozen Food Exp. v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956).

■ The test for ripeness for review appears to have been carried down from Rochester (1939) through Pennsylvania (1960), as stated in Chicago & Southern Air Lines, 333 U.S. at 112–113, 68 S.Ct. at 436–437, 92 L.Ed. 568, that "administrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process."[10]

■ In the case at bar, a number of factors may be noted as bearing directly on the resolution of the issue before us. It is elementary, of course, that in considering a motion to dismiss, all material facts well pleaded in the complaint must be taken as true. Based on our review of the complaint, the testimony taken before the hearing examiner, the findings and report of the Commission and its resulting order, the following facts appear well established.

Early in 1960, some months before the issuance of the Commission order instituting the investigation, at least one large manufacturer shipper complained of the alleged overcharges subsequently found by the Commission. Claims for refund were made against one of the appellant carriers, some of which were paid and others not. The traffic official of this shipper testified at the hearing. No other shippers appeared.

The order instituting the investigation cited the statutory authority herein-

9. Pertinent parts of § 1009 are as follows:
"(c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. * * * Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, * * *.
"(e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, * * * or otherwise not in accordance with law * * *."

10. Professor Davis would state the true test governing ripeness for review to be "the substantiality of present or imminent harm which the administrative action inflicts on the plaintiff." 3 Davis, op. cit. supra, § 21.07, pp. 176–177.

above set out at footnotes 2 and 3. The announced purpose of the investigation was "to remove any uncertainty with respect to the applicability of the provisions of the said tariffs, as amended."

A hearing was held following a rule to show cause. Witnesses testified and documentary proof was adduced. Motor carriers and the Commission were represented by counsel. The issue under investigation was sharply disputed and contested. Briefs were filed. The Commission, by a 6–5 vote, determined the issue adversely to the motor carriers and favorable to the contention of Commission counsel.

Findings and conclusions were set out in the Commission report and all were incorporated in the final order. The investigation was thereupon ordered discontinued.

The Commission report noted the adverse effect on certain motor carriers "in view of the refunds which properly should be made." It continued, stating that "[f]ailing such voluntary action, it is clear that they would be subject to an action at law by shippers pursuant to section 204a of the act. Nevertheless, we are not empowered to permit, nor may we condone, deviation from a filed tariff. * * * Indeed, carriers are required to abide absolutely by the tariff * * *."

The Commission report further stated that "[n]umerous respondents failed to collect charges in conformity with this interpretation; and the collection by any respondents of compensation greater or less than that on the foregoing basis constitutes a violation of section 217(b) of the act."

At least four of the carriers will be liable for refunds for overcharges totaling $2,703,631, if the Commission ruling prevails. The cost of recomputing the proper tariffs under the Commission ruling was shown to be more than $100,000 for four of the carriers.

As a result of the Commission order the General Accounting Office of the Government has already deducted from payments due three carriers on current shipments approximately $94,000, based on alleged overcharges on shipments made during the critical period. In its notice to the carriers that such deductions would be made, the GAO stated that it was *based on the Commission order*.

If review is denied here, as the Commission urges, the validity of the subject ruling will have to be litigated in a multitude of suits, either for refund from the Government or in defense of actions by shippers for refunds based on such overcharges. These could be tried in numerous courts. An undesirable flood of multiple litigation would result.

The instant case, however, is a class action brought by ten motor carriers and on behalf of the 1,700 members of Household Goods Carriers' Bureau.

By not making the refunds the Commission finds should be made, the carriers have already been found to be in continuous violation of § 217(b) of the Interstate Commerce Act. This situation could very well place the carriers in jeopardy in the eyes of the Commission, including loss of certificates or permits to do business.

In actions by the carriers against the Government for refund of the payments due which have been deducted, the Commission ruling could serve as prima facie evidence against the carriers, since both the carriers and the Government were parties to the Commission proceeding.

In the trial of suits for refunds by shippers against the carriers, the Commission report would be available to the courts for their guidance because of the Commission's expertise, as pointed out in Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 497–498, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958), cited in Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 85, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962).

On balance, in applying the Rochester standards, we conclude that the effect of the Commission findings, conclusions and report resulted in an order declaratory in nature, subject to and ripe for review by the district court.

The declaratory order resulted from a hearing in the tradition of judicial proceedings, as defined by Chief Justice Hughes in Shields, supra. The Commission order was not an "abstract declaration," "nor was it a stage in an incomplete process of adjudication." In its present posture, the order has not removed any uncertainty, and until it is either changed by the Commission or judicially reviewed by a court, the confusion will continue confounded.

The order "has an immediate and practical impact on carriers." It "touches vital interests of carriers and shippers alike." It "determines a right or obligation so that legal consequences will flow from it."

We cannot think that a determination such as the one before us, made under the statutory safeguards and subject to statutory review generally, can be said to have no legal effect.

The subject investigation was instituted to remove uncertainty resulting from an inadvertence concerning tariffs. It was not conducted for purposes of academic research. If the result was to have no legal effect, then we inquire, "What was intended?"

We have considered the Commission's contention that cases cited dealing with railroads are to be distinguished because the Commission has no power to order reparations under that part of the Act governing motor vehicles. Also, the argument that the Government had the power to make deductions for alleged overcharges, absent the Commission ruling has been considered. We find these unconvincing. Further, we find it unnecessary to belabor the statutory review arguments and the analogy between a Commission declaratory order and a formal declaratory judgment.

■ We express no opinion on the merits of this case. Appellants will have the burden of establishing the invalidity of the order in question. That will be for the district court to decide after a full hearing.

In conclusion, we hold the Commission order under scrutiny here to be judicially reviewable by the district court. The district court erred in sustaining the Government's motion to dismiss.

The judgment of dismissal appealed from is reversed. This cause is ordered remanded to the district court for a hearing on the merits.

Reversed and remanded.